**DEMETRIOS K. STRATIS, ESQ (022391991)**
**RUTA, SOULIOS & STRATIS, LLP**
10-04 River Road
Fair Lawn, New Jersey 07410
Tele: (201) 794-6200; Fax: (201) 794-6300
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEMETRIOS K. STRATIS, | CASE NO: 2:22-CV-06929 |
| *Plaintiff*, | |
| v. | |
| BMW OF NORTH AMERICA, LLC. AND BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT | |
| *Defendants* | |

---

## BRIEF IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS

---

On the Brief:
**Demetrios K. Stratis, Esq.  (022391991)**

TABLE OF AUTHORITIES

**CASES**

*Bell Atlantic Corp. v. Twombly*,
        550 U.S. 554 (2007) ......................................................................................5

*Clemens v. DaimlerChrysler Corp.*,
        534 F.3d 1017 (9th Cir. 2008) ......................................................................16

*Contino v. BMW of N. Am., LLC,*
        2008 WL 2940515 (D.N.J. July 29, 2008) ....................................................27

*Cooper v. Samsung Elecs. Am., Inc.*,
        374 F. App'x 250 (3d Cir. 2010) ...................................................................9

*Craftmatic Sec. Litig. v. Kraftsow,*
        890 F.2d 628 (3d Cir. 1989) .........................................................................9

*Dewey v. Volkswagen*,
        558 F.Supp.2d 505 (D.N.J. 2008)............................................................ 19, 27

*Epstein v. C.R. Bard, Inc.,*
        460 F.3d 183 (1st Cir. 2006) .......................................................................8

*Falco v Nissan North America, Inc.*,
        2013 WL 5575065 (C.D. Ca. Oct. 10, 2013)............................................ 14, 19

*Feldman v. Mercedes–Benz USA, LLC,*
        2012 WL 6596830 (D.N.J. Dec. 18, 2012) ...................................................21

*Frederico v. Home Depot*,
        507 F.3d 188 (3d Cir. 2007) ........................................................................ 9

*Greene v BMW of N. Am.*,
        2013 WL 5287314 (D.N.J. Sept. 17, 2013)...................................................14

1

*Henderson v. Volvo Cars of North America, LLC.,*
  2010 WL 2925913 (D.N.J. 2010)...................................................................................20

*In re Burlington Coat Factory Securities Litigation*,
  114 F.3d 1410 (3rd Cir.1997)........................................................................................21

*In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II),*
  2008 WL 4126264 (D.N.J. Sept. 2, 2008)..................................................................... 14

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
  2001 WL 1266317 (D.N.J. Sept.30, 1997)................................................................ 12, 13

*In re K—Dur Antitrust Litigation,*
  338 F.Supp.2d 517 (D.N.J.2004)...............................................................................*26, 27*

*n re Porsche Cars N. Am., Inc.*,
  880 F. Supp.2d 801 (S.D. Ohio 2012)............................................................................. 18

*In re Saturn L-Series Timing Chain Prods. Liab. Litig.,*
  MDL No. 1920, 2008 WL 4866604 (D. Neb. Nov. 7, 2008) ......................................... 19

*In re Volkswagen Timing Chain Product Liability Litig.,*
  2017 WL 1902160 (D.N.J. May 8, 2017)................................................................*passim*

*Kuney Int'l, S.A. v. DiIanni,*
  746 F. Supp. 234 (D.Mass. 1990)..................................................................................21

*Leaf Fin. Corp. v. Carroll*,
  2009 WL 112567 (D.Mass. Jan.16, 2009).................................................................... 10

*Lipinski v. Martin J. Kelly Oldsmobile, Inc.,*
  325 Ill. App. 3d 1139 (Ill. App. Ct. 2001)..................................................................... 15

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004)....................................................................................... 8

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
    2013 WL 5574626 (D.N.J. Oct. 9, 2013)....................................................................15, 25

*Maniscalco v. Brother Int'l (USA) Corp.*,
    709 F.3d 202 (3d Cir.2013)....................................................................................20

*Marcus v. Anderson/Gore Homes, Inc.*,
    498 So. 2d 1051 (Fla. Dist. Ct. App. 1986).............................................................15

*Mexia v. Rinker Boat Co., Inc.*,
    95 Cal. Rptr. 3d 285 (Cal. Ct. App. 2009) .............................................................15

*Montich v. Miele USA, Inc.*,
    849 F.Supp.2d 439 (D.N.J. 2012) ..........................................................................21

*Morano v. BMW of N. Am., LLC,*
    2013 U.S. Dist. LEXIS 28099 (D.N.J. Mar. 1, 2013) ............................................27

*Park v. Inovio Pharms., Inc.*,
    2016 U.S. Dist. LEXIS 24993, 2016 WL 796890 (D.N.J. Mar. 1, 2016) ...........................25

*PB Prop. Mgt., Inc. v. Goodman Mfg. Co., L.P.*,
    2013 WL 12172912 (M.D. Fla. Aug. 28, 2013).......................................................10

*Pendergast v. Sprint Nextel Corp.*,
    592 F.3d 1119 (11th Cir. 2010)..............................................................................11

*Powers v. Boston Cooper Corp.*,
    926 F.2d 109 (1st Cir 1991)......................................................................................9

*Razor v. Hyundai Motor Am.,*
    222 Ill. 2d 75 (2006) ..............................................................................................11

*Saltiel v. GSI Consultants, Inc.*,
    170 N.J. 297 (2002) ................................................................................................24

3

*Sheris v Nissan N. Am. Inc.*,
  2008 WL 2354908 (D.N.J. June 3, 2008)                                    14

*Skeen v. BMW of N. Am., LLC*,
  2014 WL 283628 (D.N.J. Jan. 24, 2014)                                 P*assim*

*Snodgrass v. Ford Motor Co.*,
  2002 WL 485688 (D.N.J. Mar. 28, 2002)                                    15

*Stewart v. Beam Global Spirits & Wine, Inc.*,
  877 F. Supp. 2d 192 (D.N.J. 2012)                                        27


*Weske v. Samsung Elecs., Am., Inc.*,
  934 F. Supp. 2d 698 (D.N.J. 2013)......................................................................9

**RULES**

Fed. R. Civ. P. 9(b)                                                   *passim*

**STATUTES**

  15 U.S.C. §§ 41-58 ...................................................................................25

  15 U.S.C. § 2310 ......................................................................................16

  FED. PRACTICE & PROCEDURE § 9.03[1][e] (3d ed. 2010) ...............................................8

  Uniform Commercial Code § 2-302 ......................................................................10

4

## TABLE OF CONTENTS

Page

Table of Authorities………………………………………………………………….i

Preliminary Statement……………………………………………………..…….…..4

Procedural History……………………………………………………………….5

Legal Standard…………………………………………………………………...5

Legal Argument……………………………………………………………….6

POINT I:  JURISDICTION……………………………………..6

POINT II:  FRCP 9(b) SPECIFICITY PLEADING …………...8

POINT III:  PLAINTIFF HAS  STATED VALID
WARRANTY CLAIMS ………………………………………10

POINT IV:  PLAINTIFF STATES A CLAIM UNDER
THE MAGNUSON-MOSS WARRANTY ACT ………………    16

POINT V:  THE PLAINTIFFS CONSUMER PROTECTION
COUNTS SATISFY THE SPECIFICITY REQUIREMENTS
OF RULE 9(b)    17

POINT VI:    PLAINTIFFS NEGLIGENT
MISREPRESENTATION CLAIM MAKES PLAUSIBLE
 ALLEGATIONS OF NEGLIGENT MISREPRESENTATIONS
OF MATERIAL FACTS CONCERNING ATTRIBUTES OF
THE ENGINE CHAIN ASSEMBLIES    23

2

**POINT VII: PLAINTIFFS' UNJUST ENRICHMENT
CLAIMS ARE PROPERLY PLED**                                            26


**POINT VIII:  PLAINTIFFS RESERVES THE RIGHT TO
AMEND ITS COMPLAINT IN THE EVENT THE COURT
FINDS ANY DEFICIENCY**                                               28


Conclusion…………………………………………………………………...31

## PRELIMINARY STATEMENT

Plaintiff incorporates by reference the facts set forth in his Verified Complaint.  By way of summary and as a preliminary statement, vehicle manufacturers engage in multiple levels of pre-production studies, field inspections and component analysis.  They possess substantial knowledge about potential defects and safety issues in the engine of their vehicles even before the consumer purchases them.  Unfortunately, it has become all too common an occurrence for manufacturers to ignore or conceal potentially dangerous defects they are cognizant of before their vehicles are sold or prior to the warranty running its course once the vehicle is purchased.  Many of these defects involve potential safety risks as here.  Courts no longer allow manufacturers to shirk their duties at the expense of the public by simply saying the clock has run on the warranty when the manufacturer is aware of potential safety defects prior to purchase or warranty expiration.  State consumer protection laws are designed to protect consumers from concealment of such material information and dishonest conduct.  This case involves the engine timing chain assembly in the Plaintiff's BMW X5 that defendants claimed were manufactured to last the life of the car. However, this engine chain assemblies were known to be defective by defendants and they did nothing to suggest an inspection, replacement or to reveal the defect in the timing chain to the Plaintiff.  As a result, his vehicle suffered catastrophic engine failure which could have been avoided by the Defendants disclosures.

4

## PROCEDURAL HISTORY

The procedural history of this case begins with the filing of the Complaint and Defendant's Motion to Dismiss.

## LEGAL STANDARD

A FRCP 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *See* Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007); *see also* In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397 (3d Cir. 2000) (stating that a complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim). In reviewing a motion to dismiss, pursuant to FRCP 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, the matters of public record. *See* Pittsburg v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998).

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. *See* Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994); *see also* Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).

5

The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *See* Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). "The defendant bears the burden of showing that no claim has been presented." *See* Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

## **LEGAL ARUGUMENT**

## **POINT I:  JURISDICTION**

Plaintiff has responded to the Courts inquiry regarding jurisdiction and has filed a letter as to same.  In it, Plaintiff submits that Jurisdiction is based on federal-question jurisdiction and to the extent its Complaint is not clear, pursuant to Legal Argument set forth below, reserves his right to amend the Complaint to crystallize the federal-question jurisdiction.

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 133.  As stated by our United States Supreme Court:  "when federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction  under § 1331." Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 378–79, 132 S. Ct. 740, 748–49, 181 L. Ed. 2d 881 (2012).

6

Count 3 of Plaintiff's Compliant (Document 1) makes clear that relief is sought, among other things, pursuant to the Magnuson-Moss Warranty Act, 15 USC sect 2310(d)(1)(A). The Magnuson-Moss Warranty Act is a federal statute. As such, this District Court has jurisdiction. As stated by this District Court: "The MMWA [Magnuson-Moss Warranty Act] is a federal statute which serves as a vehicle for consumers to assert state law breach of warranty claims in federal court." DeFrank v. Samsung Elecs. Am., Inc., CV1921401KMJBC, 2020 WL 6269277, at *17 (D.N.J. Oct. 26, 2020). As such, Plaintiff has raised a federal question and as such, jurisdiction is properly before this District Court.

Defendant may assert that Plaintiff must establish an amount in controversy in excess of $50,000 pursuant to 15 USA sect 2310(d)(3)(B) and has not done so; however, Plaintiff asserts that the amount in controversy exceeds $50,000 and, in fact, has pled they exceed $75,000. Moreover, Defendants agent has represented that the cost for the repairs will exceed $42,000 and Plaintiff has suffered additional economic loses such as lost use of the vehicle for now five months and other incidental costs in excess of the $50,000 threshold. And for the reason expressed below, the threshold is not applicable herein. As Plaintiff is entitled to an indulgent reading of the Complaint at this stage of the litigation, Plaintiff asserts that he has adequately pled a federal question under the Magnuson-Moss Warranty Act, 15 USC sect 2310(d)(1)(A).

7

In the event the Court finds that Plaintiff's complaint is deficient or lacks sufficient clarity as to jurisdiction (or otherwise), pursuant to Fed. Rule. Civ. P. 15(a), a party may amend "the party's pleading once as a matter of course at any time before a responsive pleading is served."   And neither "a motion to dismiss, nor a motion for summary judgment, constitutes a responsive pleading under Fed.R.Civ.P. 15(a)." Sunset Fin. Res., Inc. v. Redevelopment Grp. V, LLC, 417 F. Supp. 2d 632, 641 (D.N.J. 2006).  Hence, Plaintiff reserves the right to file an amended pleading if necessary.

## POINT II:  FRCP 9(b) SPECIFICITY PLEADING

Fed. R. Civ. P. 9(b) entitled "Fraud or Mistake; Conditions of the Mind" states "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); 10B Wright & Miller, Mary K. Kane, FED. PRACTICE & PROCEDURE § 9.03[1][e] (3d ed. 2010).  The purpose of Rule 9(b) is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *See also Lum v. Bank of Am.*, 361 F.3d 217, 223-224 (3d Cir. 2004).  The heightened fraud pleading requirements of Rule 9(b) are fully satisfied where the complaint sets out the "time, place and content of the alleged false or fraudulent representations." *Epstein v.*

8

*C.R. Bard*, Inc., 460 F.3d 183, 189-190 (1st Cir. 2006) (quoting *Powers v. Boston Cooper Corp.*, 926 F.2d 109,111 (1ˢᵗ Cir 1991); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."); Rodriguez-Ortiz, 490 F.3d at 95. Significantly, where fraud by omission is alleged, the heightened pleading requirements of Rule 9(b) are relaxed. The surreptitious nature of corporate fraud by omission requires only disclosure of the "general outline of the general scheme." *Kuney Int'l, S.A. v. DiIanni*, 746 F. Supp. 234, 237 (D.Mass. 1990) ("The general outline of the general scheme to defraud alleged by the plaintiff provides the defendant with notice of the grounds on which plaintiff's claim is based" and satisfies Rule 9(b) requirements.). *See also Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 708 (D.N.J. 2013) (courts should utilize a less rigorous pleading standard on a motion to dismiss where "specific information is in the exclusive control of the defendant") (citing to *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)). The requirements of Rule 9(b) are satisfied in the absence of "allegations of date, place or time," as long as plaintiffs inject "some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. Corp,* 742 F.2d at 791.

Contrary to the assertions of the Defendant, the Complaint satisfies the requirements of Fed. R. Civ. P. 9(b).

## POINT III: PLAINTIFF HAS STATED VALID WARRANTY CLAIMS

### A. Plaintiff has Asserted Valid Express Warranty Claims

BMW NA argues that plaintiff's warranty claims fail because plaintiff fails to allege that he experienced malfunction of their defective chain assemblies within the warranty period. Defendant BMW NA's entire argument ignores plaintiff's express allegations that the warranty terms and limitations were unconscionable. While an express warranty may not cover defects manifesting outside the warranty period, a plaintiff may state a claim if he properly alleges that the warranty was unconscionable. *Skeen v. BMW of N. Am., LLC*, 2014 WL 283628, at 12 (D.N.J. Jan. 24, 2014). The Uniform Commercial Code § 2-302 states in pertinent part:

> (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

Under New Jersey law, an allegation of unconscionability requires a plaintiff to plead both substantive as well as procedural unconscionability. *Id*., 14; *PB Prop. Mgt., Inc. v. Goodman Mfg. Co., L.P.*, 2013 WL 12172912, at *4 (M.D. Fla. Aug. 28, 2013); *Leaf Fin. Corp. v. Carroll*, 2009 WL 112567, at *4 (D. Mass. Jan.16, 2009). A contract term will be considered substantively unconscionable if the term is "excessively disproportionate," involving an "exchange of obligations so one-sided as

to shock the court's conscience." *Skeen* at 13.  *See also Leaf Fin. Corp* (requiring a showing of "contract terms which are unreasonably favorable to the other party" for substantive unconscionability); *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1139 (11th Cir. 2010) (ruling that "[s]ubstantive unconscionability focuses on the terms of the agreement itself and whether the terms of the contract are 'unreasonable and unfair'"); *Razor v. Hyundai Motor Am.*, 222 Ill.2d 75, 100 (2006) ("[s]ubstantive unconscionability refers to those terms which are inordinately one-sided in one party's favor").  "Likewise, regardless of the state, procedural unconscionability focuses on the circumstances of the negotiation that produced the contested term, especially the personal qualities of the negotiators." *Skeen* at *13.  Procedural unconscionability can be pled through allegations of "oppression" which "arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Id*.

Both forms of unconscionability have been sufficiently pled in the Complaint. As in *Skeen* and *VW Timing Chain Litig.*, *supra* at *11-12, the Complaint alleges that defendants knew of the defect before the sale of the vehicle to plaintiff and that the defect would likely manifest after the warranty period but prior to the end of the vehicles' useful and expected life, and thus unfairly manipulated the warranty terms to avoid paying for repair costs when their vehicles' engine components failed prematurely. See also Skeen at *14; VW Timing Chain Litig. at **11-12.  Also, the

11

Plaintiff alleges that with knowledge of the timing chain defect, the Defendant failed to update their service bulletins to require timing chain inspection or replacement at reasonable intervals to avoid the timing chain failure before the vehicles expected life. Moreover, plaintiff alleges that, given the inherent defects in the vehicle and incorrect maintenance recommendations, the terms of the warranty were "oppressive, unreasonable, unconscionable" and one-sided in unfairly shifting repair costs to consumers.

Plaintiff additionally alleges that he had no meaningful choice in setting forth the time and mileage limitations in the warranty, and was unfairly taken advantage of because defendants knew about the defect at the time of sale, while the consumer Plaintiff did not. Beyond the disparity in sophistication and knowledge of the parties, Plaintiff also suffered from a lack of bargaining power and warranty competition, as well as an inability to bargain to modify the unfair terms of the warranty, including the manipulated durational limits.

For these reasons, Plaintiff has pled sufficient facts alleging that the express warranties were unconscionable, and therefore defendants' warranty expiration arguments are premature at the pleading stage. *VW Timing Chain Litig.* at *11. *See also In re Ford Motor Co. Ignition Switch Products Liability Litig.*, 1999 WL33495352 at *12 (D.N.J. May 14, 1999). Accordingly, plaintiff's breach of express warranty claims and breach of implied warranty claims should not be dismissed until a factual

finding on their conscionability is determined. *Skeen* at \*12.

## B. Plaintiff Has Asserted Valid Implied Warranty Claims

BMW NA erroneously argues that Plaintiff failed to allege the vehicle was not merchantable at the time of sale. However, the defendant fails to properly read the complaint's allegations that unequivocally state that his vehicle was not merchantable at the time of sale. Plaintiff specifically alleges that defects in materials, manufacture and/or workmanship inherent in his chain assembly existed from the time of the sale and that his vehicles were never fit for the ordinary purposes for which passenger vehicles are used – the safe and effective transport of passengers. Plaintiff faced the constant prospect during the course of operation of "catastrophic engine damage and/or complete failure ... loss of engine power without warning, loss of power-assisted steering and reduced braking ..." and "loss of directional stability and steering." *See also In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, 2008 WL 4126264, at \*20 (D.N.J. Sept. 2, 2008) (finding a claim for breach of implied warranty was sufficiently pled where plaintiffs assert that their vehicles were not merchantable at the time of the sale because they were not reasonably fit for their intended purpose of safe transportation). Although merchantability does not mean that "the goods are exactly as the buyer expected," *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 2001 WL 1266317, at \*22 (D.N.J. Sept.30, 1997), an automobile is not merchantable when a defect renders a vehicle unfit for

13

its ordinary purpose of providing *safe* transportation. *In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)* at *20. *See also*, *Falco v Nissan North America, Inc.*, 2013 WL 5575065 at *9 (C.D. Ca. Oct. 10, 2013) (finding timing chain defect complaint properly alleged a breach of implied warranty claim since, even if the vehicle takes occupant from point A to B, "[a] vehicle that smells, lurches, clanks and emits smoke over an extended period of time is not fit for its intended purpose").

BMW NA cites to *Sheris v Nissan N. Am. Inc.*, 2008 WL 2354908, at *5–6 (D.N.J. June 3, 2008) and suggests that because plaintiff drove his vehicles for a few years before the chain assembly defects manifested, no defects were inherent at the time of sale. *Sheris*, however, is distinguishable. *Sheris* concerned whether a particular brake system was defective where this system requires periodic replacement of so-called "wear and tear" components. Because the plaintiff was able to drive his vehicle for 20,618 miles and for about two years before he needed to replace his brake pads and rotors, the court found that the plaintiff failed to allege that the vehicle was unfit at the time of sale for its ordinary purpose of safe transportation. Plaintiff, here, contends that BMW vehicles incorporated defects in their engine chain assemblies that are non-maintenance lifetime components of the engine. It is not a "wear and tear" item. The chain assembly defects existed at the time of sale and created conditions for unsafe catastrophic failure from the date of purchase. *See Greene v BMW of N. Am.*, 2013 WL 5287314, at *3 (D.N.J. Sept. 17, 2013) (distinguishing *Sheris*).

Established case law of New Jersey make clear that so long as the alleged defect in the goods existed at the time of sale, a claim for breach of implied warranty of merchantability has been properly stated. *See e.g. Snodgrass v. Ford Motor Co.*, 2002 WL 485688, at 5 (D.N.J. Mar. 28, 2002); *Lipinski v. Martin J. Kelly Oldsmobile*, Inc., 325 Ill. App. 3d 1139, 1151 (Ill. App. Ct. 2001) ("An implied warranty of merchantability applies to the condition of the goods at the time of sale and is breached only if the defect in the goods existed when the goods left the seller's control."); *Marcus v. Anderson/Gore Homes, Inc.*, 498 So. 2d 1051, 1052 (Fla. Dist. Ct. App. 1986). An "implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale."); *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at *22 (D.N.J. Oct. 9, 2013) (citing *Mexia v. Rinker Boat Co., Inc.*, 95 Cal. Rptr. 3d 285, 290–91 (Cal. Ct. App. 2009)) (quotations omitted) (to state a breach of implied warranty claim, a plaintiff need *not* allege that their vehicle "failed to work properly from the outset"). In fact, "[u]ndisclosed latent defects ... are the very evil that the implied warranty of merchantability was designed to remedy." *Id*. (citations and quotations omitted). Ultimately, "[i]n the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery." *Id. See also Collins v. Sears, Roebuck and Co.*, 31 Mass. App. Ct. 961 (Mass. App. Ct. 1992) (finding that evidence of a defect which existed in an

electric clothes dryer at time of sale that caused a house fire properly supported a breach of implied warranty of merchantability claim even though the fire occurred two and one half years *after* the sale).

Although the total failure of plaintiffs timing chain assembly and discovery of the defective nature may not have occurred until years after the sale, the inherent defects in materials, manufacture and/or workmanship were present at the time of sale. This condition renders Plaintiff's vehicle as unmerchantable and plaintiff has properly pled a claim for breach of implied warranty.


## POINT IV: PLAINTIFF STATES A CLAIM UNDER THE MAGNUSON-MOSS WARRANTY ACT

Plaintiff's MMWA claim is expressly brought pursuant to 15 U.S.C. § 2310(d)(1)(A) that allows an MMWA claim to be brought by a person in their respective states' courts. Because Plaintiff has established valid warranty claims, see Legal Point III above, then its MMWA claim is valid; in other words, where plaintiff asserts a viable breach of warranty claim, either express and/or implied, plaintiff has satisfied the pleading requirement to assert an MMWA claim. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (MMWA claims "stand or fall" with the "express and implied warranty claims under state law"). In fact, aside from the jurisdictional matter discussed above, the defendant does not attack the sufficiency of

16

plaintiff's MMWA claim.   Rather, the defendant's sole argument in support of its motion to dismiss plaintiff's MMWA claim is premised on its anticipated dismissal of plaintiffs express and implied warranty claims.   As set forth above, those claims are valid and as such, Plaintiff's MMWA claim must stand.

## POINT V:  THE PLAINTIFFS CONSUMER PROTECTION COUNTS SATISFY THE SPECIFICITY REQUIREMENTS OF RULE 9(b)

The complaint alleges in sufficient detail that the defendants knowingly failed to disclose to plaintiff that his vehicle was defective, i.e., the engine's chain assemblies prematurely fail and subjected his engine to power loss, stalling and/or catastrophic engine failure.   The complaint also alleges that the defendants affirmatively misrepresented the characteristics of the chain assemblies including performance, maintenance and durability in their misleading warranty materials and maintenance schedules that directly influenced Plaintiff.   As discovery will reveal, where there are multiple sources of reliable information, such as consumer complaints aggregate data collected from dealers including monitoring of warranty claims and performance of vehicles, defendants' warranty and field inspection personnel, pre-and post-release testing data compiled by various BMW, NA specialized departments, multiple chain component redesigns, and evidence of standard industry monitoring practices, these

sources are sufficient to support a claim of a manufacturer's knowledge of the defect. *See In re Porsche Cars N. Am., Inc.*, 880 F. Supp.2d 801, 816-17 (S.D. Ohio 2012).

Unanticipated sudden engine primary and secondary chain assembly failure is also a material safety risk to occupants of Plaintiff's vehicle and other motorists. The defendants failed to inform Plaintiff that the engine chain assemblies were defective and should be replaced, at minimum, every four years or 50,000 miles, whichever occurs first, or at some point prior to the warranty expiration, to prevent unanticipated failure. The defendants made misrepresentations and omissions of a material nature concerning the characteristics of the vehicle that was received by Plaintiff prior to and at the point of vehicle purchase. These misrepresentations, omissions and fraudulent statements were made by BMW dealers referencing the defendants' publications concerning these vehicles that created a reasonable belief that the useful life expectancy of the chain assemblies in BMW engines without a major failure was in excess of 150,000 miles. These representations specifically and unequivocally stated that the engine chain assemblies were non-maintenance lifetime engine components. Had plaintiff known of the material omission and false statements during the warranty period, he would have brought his vehicle into an authorized BMW dealer to have the chain assembly replaced prior to the end of the warranty. In fact, Plaintiff asserts that his vehicle was solely a dealer maintained vehicle and only BMW service centers ever services his vehicle.

In *VW Timing Chain Litig., supra*, Chief Judge Linares had the opportunity to explore very similar complaint allegations when deciding a motion to dismiss involving another automobile manufacturer and its American subsidiary. *See VW Timing Chain Litig., supra. See also Skeen, supra*; *Falco v. Nissan North America Inc., supra* at *6; *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, 2008 WL 4866604 (D. Neb. Nov. 7, 2008).

The court in *VW Timing Chain* denied the defendants' motion to dismiss the multi-state consumer protection counts sounding in fraud where it was determined that:

> As to the particularity, the Court has discussed, in great detail, how Plaintiffs' Complaint is replete with allegations of both overt misrepresentations and active concealment with respect to the alleged defect in the Timing Chain System. Indeed, Plaintiffs make very specific allegations about how they were supposedly misled about the defective Timing Chain System, along with misrepresentations by Defendant regarding the warranties, the useful life of the vehicle and its engine components, as well as the necessary maintenance and repairs associated with the Class Vehicles.

*Id*. at *23.

Similarly, in *Dewey v. Volkswagen*, 558 F.Supp.2d 505 (D.N.J. 2008), the court declined to dismiss the fraudulent omission count premised on common law fraud and the New Jersey Consumer Fraud Act where the complaint alleged:

> Volkswagen did not fully and truthfully disclose to its customers the true nature of the inherent design defects, which were not readily discoverable until years later, often after the warranty has expired. As a result, Plaintiffs and the other Class Members were fraudulently induced

19

to lease and or purchase the Class Vehicles with the said design defects and all of the resultant problems....

*Id.* at pp. 527-28.

Other courts have held that similar language satisfies the pleading requirements of Fed R. Civ.

P. 9(b). *Maniscalco* held that the following language satisfied Rule 9(b) requirements where it was alleged that manufacturer Brother International Corporation committed fraud by:

c. Marketing, advertising, and selling machines *that they know* are likely to fail due to the ME41 defect before their expected useful life of five years or 50,000 pages of printed material, *while intentionally concealing and failing to disclose* information to prospective purchasers; and

d. Unconscionably limiting warranty coverage for a print-head failure caused by the ME41 defect, despite [Defendant]'s knowledge that the ME41 defect would cause print heads in MFC machines to fail after the warranty period expired, but before the projected useful life of the MFC machines ....

*Id.* at p. 500 (emphasis in original).

The following complaint allegations were deemed sufficient to satisfy Rule 9(b)'s requirement in *Henderson v. Volvo Cars of North America, LLC.,* 2010 WL 2925913 (D.N.J. 2010):

Defendants were aware that model years 2003 through 2005 of the Volvo XC90 T6 suffered from a common design defect resulting in transmission problems, but failed to disclose this to Plaintiffs and Class members....

Defendants did not fully and truthfully disclose to its customers the true

20

nature of the inherent design defect with the transmission, which was not readily discoverable until years later, often after the warranty has expired. As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the said design defects and all of the resultant problems.

*Id.* at *5.

The complaint here fully comports with the requirements of Fed R. Civ. P. 9(b) where the plaintiffs have properly alleged the elements of surreptitious corporate fraud by omission by the defendants. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d at 1418; *Kuney* at 237. The complaint does more than just inject "some measure of substantiation into their allegations of fraud" since the complaint accomplishes the primary aim of Rule 9(b) that is to "place the defendants on notice of the precise misconduct with which they are charged." *Seville Indus. Mach. Corp,* 742 F.2d at 791. *See also*, *Montich v. Miele USA, Inc*., 849 F. Supp. 2d 439, 451 (D.N.J. 2012). "[P]laintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim." *Feldman v. Mercedes–Benz USA, LLC*, No. 11-cv-00984, 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012). This principle is particularly applicable to this proceeding since the defendants design and manufacture complex products where evidence demonstrating some elements of fraud by omission is entirely within BMW's exclusive possession. The complaint sets out enough specificity of the defendants' fraud by omission to satisfy both the relaxed fraud by omission standard

21

and heightened fraudulent misrepresentation pleading requirements of Fed R. Civ. P. 9(b). Those allegations detail "what the omissions were ... the person responsible for the failure to disclose ... the context of the omissions and the manner in which they misled the plaintiff, and ... what defendant obtained through the fraud." *Id*. at ¶¶ 107-114.

The complaint adequately identifies that the defendants fraudulently omitted to disclose material facts basic to both the purchase and service of the vehicle including information concerning the engine chain assembly defects in an effort to deceive Plaintiff. This information included impact on future repairs, operating costs and vehicle reliability. The defendants fraudulently concealed from the plaintiff that the chain assembly defect the defendants knew or should have known was material and central to the marketing and sale of the vehicle to prospective purchasers and Plaintiff himself. The defendants concealed from plaintiff during the warranty period that a defect existed with the engine chain assemblies that could have and should have been remedied by replacement during the warranty period, particularly as it was a safety issue. The defendants' withholding of this material information deprived plaintiff of the right to have the defective chain assembly replaced without cost under warranty.

It is alleged that this material information was fraudulently concealed and/or actively suppressed in order to sell vehicles to uninformed consumers (including the Plaintiff). Other fraud was premised on false statements set out in the

22

Owner's Manual and the Service and Warranty Information materials.  Clearly, if the plaintiff had been informed of defects in the vehicle, he would not have purchased the vehicle or would have paid substantially less, and as a result he has suffered diminution in value in addition to required payment for repairs, as well as the cost of future repairs and loss use of vehicle all due to catastrophic engine failure.  If the Plaintiff had been informed of the defect during the warranty period, he would have had the defective part replaced under warranty. The defendants' conduct violated the consumer fraud statutes further by depriving the Plaintiff of the repair or replace remedy set out in the vehicle limited power train warranty.

In sum, the complaint sets out in sufficient detail defendants' fraudulent omissions and should not be dismissed since sufficient allegations of the defendants' fraud by omission, satisfy the pleading specificity requirements of Rule 9(b) for the violation of state court consumer protection statutes sounding in fraud.

**POINT VI:   PLAINTIFFS NEGLIGENT MISREPRESENTATION CLAIM MAKES PLAUSIBLE ALLEGATIONS OF NEGLIGENT MISREPRESENTATIONS OF MATERIAL FACTS CONCERNING ATTRIBUTES OF THE ENGINE CHAIN ASSEMBLIES**

In addition to plaintiffs allegations of material omissions, the complaint articulates in multiple paragraphs, defendants' affirmative representations and incomplete representations that were misleading to Plaintiff concerning the cause

of engine failures, the useful and expected life of his vehicles, and the recommended maintenance program. These representations created a reasonable belief that the engine primary and secondary chain assemblies were non-maintenance engine lifetime components with a useful life expectancy in excess of 150,000 miles. The Complaint also alleges that the defendants' customer service representatives affirmatively misrepresented the existence of chain assembly defects and the cause for the vehicles' failures and consequent warranty coverage. The defendants' affirmative statements alleged are more than sufficient to maintain the count for negligent misrepresentation. *VW Timing Chain Litig.,2017 WL 1902160,* at *18 (describing actionable affirmative misrepresentations in warranty manuals, maintenance schedules, warranty application and cause of component failure that are substantially similar to the complaint allegations here).

### A. Defendants Had Exclusive And Superior Knowledge Of The Chain Assembly Defects And, As Such, Owed A Duty Of Disclosure To Vehicle Purchasers

The defendants owed an independent legal duty to disclose, *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 315 (2002). The defendants owed a duty to disclose chain assembly defects since they were in exclusive possession of the defect information that affected the vehicle safety while vehicle purchasers were not cognizant of the defects or the associated dangers. These allegations are sufficient to establish that the defendants possessed superior and exclusive defect knowledge and as

24

such had a duty of full disclosure to the vehicle owners. *See Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at *17 (D.N.J. Oct. 9, 2013) (duty of disclosure owed where manufacturer with exclusive knowledge of defect through "pre-release testing data, early consumer complaints . . . testing conducted in response to those complaints, high failure rates and replacement parts sales data contained in [Land Rover's] warranty databases, as well as high reimbursement claims paid to Land Rover dealers"); *Mukamal v. GE Capital Corp.* (*In re Palm Beach Fin. Partners, L.P.*), 517 B.R. 310, 335 (Bankr. S.D. Fla. 2013).

Defendant BMW NA's arguments that the economic loss rule precludes claims premised on negligent misrepresentation are similarly unavailing. As every rule has its exception, New Jersey and other states have specific exceptions to the economic loss rule where tort claims are based on fraud, conduct independent of a contract or where there is a risk of personal injury. *See, e.g.*, *Park v. Inovio Pharms., Inc.*, 2016 U.S. Dist. LEXIS 24993, *4-6, 2016 WL 796890 (D.N.J. Mar. 1, 2016).

In this case, as in *VW Timing Chain Litig*, the defendant's fraudulent misrepresentations and omissions were outside of any contract and the chain assembly defects pose serious risk of personal harm. *VW Timing Chain Litig.,* at *21; CAC ¶¶ 3-4, 41-44, 73. Accordingly, plaintiffs' negligent misrepresentation claims are not precluded by the economic loss rule and should be allowed to proceed. Indeed, Plaintiff has, nonetheless pled economic losses in excess of the

$50,000.   As set forth, Defendants representatives have quoted a cost of $42,000 and Plaintiff has lost the use of the vehicle and other consequential damages in excess of the $50,000.

## POINT VII: PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE PROPERLY PLED

BMW NA also seeks dismissal of plaintiffs' unjust enrichment claims because, it contends, plaintiffs have an adequate remedy at law.  However, unjust enrichment may be pleaded in the alternative. *See* Fed. R. Civ. P. 8(d)(2) & (3) (a party may plead claims in the alternative and "may state as many claims or defenses as it has, regardless of consistency"); *In re K-Dur Antitrust Litigation*, 338 F. Supp.2d 517, 544 (D.N.J. 2004) ("it has long been recognized that plaintiffs are allowed to plead alternative causes of action and unjust enrichment is commonly recognized as one of those permissible alternative causes of action").

The cases BMW NA cites are also distinguishable as they involve circumstances where an express warranty or contract completely governed the claims at issue. Here, the warranty extension did not encompass all components of the primary and secondary chain assemblies alleged to be defective.

Defendant argues that New Jersey law requires a direct transaction is groundless as New Jersey does not have a privity requirement to plead unjust enrichment. *See VW Timing Chain Litig., supra*, at *22 (sustaining unjust

enrichment claim at motion to dismiss stage and noting defendant manufacturer received a benefit at plaintiffs' expense when they sold vehicles with defective timing chains); *Stewart v. Beam Global Spirits & Wine*, *Inc.*, 877 F. Supp. 2d 192, 200 (D.N.J. 2012) (manufacturer that advertises its products to consumers has a sufficiently "direct relationship" with consumers to support an unjust enrichment claim, even if the consumer purchases the product from an intermediate retailer); *see also In re K-Dur Antitrust Litigation* at 544. ("Defendants' related argument that an unjust enrichment claim requires an allegation that Plaintiffs dealt directly with Defendants, is also without merit."); *Dewey v. Volkswagen AG*, *supra,* at 528-29 (D.N.J. 2008) (denying motion to dismiss unjust enrichment claims asserted by consumers against car manufacturer).[33]

It is premature to make the factual determination of whether plaintiff purchased from certain BMW dealer conferred a sufficiently direct benefit upon defendants on a motion to dismiss. *See Contino v. BMW of N. Am., LLC,* 2008 WL 2940515, at *2-3 (D.N.J. July 29, 2008) ("Defendant  asserts that the connection between [plaintiff's] purchase of the vehicle from an unauthorized dealer to Defendant creates too remote a connection for recovery in an unjust enrichment claim. Still, Plaintiff has met his burden to plead unjust enrichment *and any questions of remoteness of connection is an issue for the finder of fact*.") (emphasis added); *Morano v. BMW of N. Am., LLC,* 2013 U.S. Dist. LEXIS 28099, at *2-3 (D.N.J.

27

Mar. 1, 2013) (rejecting BMW's argument of lack of privity with consumers as BMW NA makes sales or leases to consumers ).

Accordingly, the unjust enrichment claims should be sustained.

## POINT VIII:  PLAINTIFFS RESERVES THE RIGHT TO AMEND ITS COMPLAINT IN THE EVENT THE COURT FINDS ANY DEFICIENCY

FRCP 15(a)(2) provides that a court freely should grant leave to amend a complaint when justice so requires.  The Rule embodies a liberal approach to amendment and provides that, following an initial amendment by right prior to the filing of a responsive pleading, a party is entitled to amend the compliant, even over the objection of the opposing party, "by leave of court."  The rule specifies that "leave shall be freely given when justice so requires."  *See* Cornell & Co., Inc. v. OSHRC, 573 F.2d 820, 823 (3d Cir.1978).

In evaluating challenges to the denial of opportunity to amend the courts have held consistently that leave to amend should be granted freely.  *See* Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing, 663 F.2d 419, 425 (3d Cir.1981); *see also,* Bechtel v. Robinson, 886 F.2d 644 (3d Cir.1989) (court should use "strong liberality" in considering whether to grant leave to amend).  This approach ensures that a particular claim will be decided on the merits rather than on technicalities.  *See* Wright, Miller and Kane, Federal Practice and Procedure, Vol. 6, § 1471 at 505 (2d ed. 1990).

The policy favoring liberal amendment of pleadings is not, however, unbounded. In Foman v Davis, the Supreme Court delineated factors which may weigh against amendment. These include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

A district court may exercise its discretion to deny leave to amend a complaint in situations in which the plaintiff has delayed seeking leave to amend if the delay "is undue, motivated by bad faith, or prejudicial to the opposing party." See Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir.2008) (citing Adams v. Gould, 739 F.2d 858, 864 (3d Cir.1984)). Delay is "undue" when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend. Id.

In Adams v. Gould, supra, the Court observed:

FRCP 15 embodies the liberal pleading philosophy of the federal rules. Under FRCP 15(a), a complaint may be amended once as a matter of right and afterward by leave of the court, which is to be freely granted. See Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222, citations omitted] (1962); Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 597-98 (5th Cir.1981). This liberal amendment philosophy limits the district court's discretion to deny leave to amend. The district court may deny leave to amend only if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party. Foman, supra, 371 U.S. at 182, 83 S.Ct. at 230 (citation omitted); Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir.), cert. denied, 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 150 (1984). The court may also refuse to allow an amendment that fails to state a cause of action. Massarsky v. General

29

Motors Corp., 706 F.2d 111, 125 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

In this matter, no prejudice will exist to either party. Plaintiff seeks to file an Amended Complaint and reserves its right to do so in the event the Court finds any deficiency in its initial pleading. The Defendants cannot assert any legally recognized prejudice and accordingly, the application should be granted. Discovery has not yet begun in this action, Defendant has yet to file an Answer, and the Parties have yet to exchange written discovery and the matter is in its initial stages of litigation.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants Motion to Dismiss, pursuant to FRCP 12(b)(6), be denied in its entirety and Plaintiff be granted leave to file an Amended Complaint if necessary to cure any defect.

Respectfully Submitted,

RUTA, SOULIOS & STRATIS, LLP
Attorneys for Plaintiff

Dated:  February 21, 2023                By:   *Demetrios K. Stratis*

Demetrios K. Stratis, Esq.

30